**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**RAYMOND PORFIRI,**

**Plaintiff,**

**v.**

**RAFAEL MOURE ERASO, Chairman of the Chemical Safety and Hazard Investigation Board,**

**Defendant.**

**Civil Action No. 14-1649 (JEB)**

**MEMORANDUM OPINION**

Plaintiff Raymond Porfiri serves as Deputy General Counsel for the United States Chemical Safety and Hazard Investigation Board. In April 2011, he fell from a tree and injured his legs and back. Ever since, he has suffered pain and other physical impairments. Largely relying on the Rehabilitation Act, Porfiri has sued the Board for discriminating against him on the basis of his physical limitations and for retaliating against him for seeking reasonable accommodations. He also alleges that the Board violated the Family Medical Leave Act by forcing him to deplete his leave balances, requiring unnecessary medical inquiries as a condition of his returning to work, and changing his job responsibilities after he returned from leave. The Board now moves to dismiss all five counts set forth in Plaintiff's Complaint. The Court will deny that Motion as to all but Count III, concluding that, despite the relative thinness of Porfiri's claims, he has pled adequate facts to survive at this stage.

## I. Background

According to his Complaint, which the Court must presume as true for purposes of this Motion, Porfiri is an attorney in the Board's Office of General Counsel (OGC), where he has

worked since 1998. See Compl., ¶ 16. In April 2011, he injured his legs and back when he fell from a tree outside his home while doing yardwork. Id., ¶ 28. His injuries made it difficult for him to walk, sit, and stand, and they caused sudden and severe pain. Id., ¶¶ 32–33. Plaintiff thereafter requested and received several work-related accommodations from his supervisor, then-General Counsel Chris Warner, including teleworking arrangements and periodic medical leave. Id., ¶¶ 36–37.

In early October 2012, shortly after the Board's Chairman appointed a new General Counsel, Richard Loeb, Porfiri's injuries were aggravated during a medical procedure. Id., ¶¶ 39–40. A few days later, Loeb held a series of meetings with Plaintiff in which Loeb told him of several work-related changes. First, Board staff attorneys, previously supervised by Plaintiff, would thereafter report to Loeb, id., ¶ 45; second, Plaintiff would be required to move offices, id., ¶ 46; and third, his ability to telework would be limited to an average of one day per week — a reduction from the twice-weekly telework policy he had enjoyed under his previous boss. Id., ¶¶ 47, 59. Loeb also mentioned that he was considering altering the job duties of OGC attorneys to require them to deploy to the sites of chemical accidents alongside Board investigators — a duty that Porfiri alleges had never been part of their job descriptions. Id., ¶¶ 48–54. On October 10, 2012, the same day Porfiri learned of many of these changes, he contacted the Board's Equal Employment Opportunity Director to complain of discrimination and to initiate counseling. Id., ¶¶ 9, 57.

Five days later, on October 15, 2012, Plaintiff requested a number of work-related accommodations, including: (1) a restriction on any work-related travel until his condition "improved substantially"; (2) postponement of his office move; and (3) the ability to telework two days per week. Id., ¶ 59. The Board's designated human resources officer met with Plaintiff

to discuss his requests and asked that he support them with medical documentation. Id., ¶ 62. Although Porfiri objected to providing the information, he nevertheless submitted a note from his doctor on November 1, 2012, to justify both his requested accommodations and a new request for extended medical leave (under the Family and Medical Leave Act) from mid-November to mid-December 2012. Id., ¶¶ 63, 67–68. The Board granted his request for medical leave but did not immediately respond to his accommodation requests. Id., ¶¶ 70, 84.

Before his scheduled return from medical leave on December 16, 2012, Porfiri asked to extend his absence through January 2, 2013, seeking to draw from his balance of use-it-or-lose-it annual leave instead of further reducing his store of FMLA leave. Id., ¶ 71. Loeb granted Plaintiff's request to be absent, but insisted that he continue using his FMLA leave, as the Board had not received a note from Plaintiff's physician indicating that he was capable of returning to work. Id., ¶ 72. Porfiri secured a second doctor's note to that effect, which he submitted to the Board on December 28, 2012, several days before he was scheduled to return to work. Id., ¶ 77. But Loeb was not yet ready for Plaintiff to return; he wanted additional time to review the new doctor's note with a government physician, and so he placed Porfiri on administrative leave. Id., ¶ 78. That leave extended until January 22, 2013, when the Board informed Plaintiff by email that he could return to work. Id., ¶ 84. In the same email, the Board responded to his October 15, 2012, request for accommodations, granting him a temporary reprieve from travel-related duties, allowing him to telework twice per pay period (but not twice per week), and offering to provide movers to ease the physical burdens of moving offices. Id., ¶¶ 136–138; see also Mot., Exh. C (Board's January 22, 2013, Decision Letter responding to Plaintiff's request for accommodations) at 271–72.

Immediately upon his return to work in late January 2013, the Board told Porfiri that it had adopted its earlier proposal that would require OGC attorneys to deploy to accident sites, resulting in a new position description that "'include[d] deployment support in the field as an essential function of the job as an attorney.'"  See Compl., ¶ 88 (quoting an email from the Board's human-resources officer).  The Board gave Plaintiff a new position description reflecting the in-field travel requirement and removing his responsibilities for supervising OGC staff attorneys.  Id., ¶¶ 91, 94.  Plaintiff alleges that, although several other attorneys work in the Office of General Counsel, only his position description was revised to require work-related travel.  Id., ¶¶ 119–121.

After properly exhausting his administrative remedies, Plaintiff filed this suit on October 10, 2014, against Rafael Moure-Eraso, the Board's Chairman.  (Given the nature of Plaintiff's allegations, the Court will refer to the Board as the Defendant here.)  Porfiri alleges four counts of Board discrimination in violation of the Rehabilitation Act: first, it treated him differently from other employees because of his disability; second, it denied his requests for reasonable accommodations; third, it made improper medical inquiries and/or disclosed confidential information; and fourth, it retaliated against him for asserting his rights under the Act.  He also alleges one violation of the FMLA, alleging that the Board interfered with his rights under that Act by requiring unnecessary medical examinations as a condition of his going on, and returning from, medical leave, and by failing to restore him to an equivalent position upon his return from that leave.  The Board responded with the instant Motion to Dismiss, which the Court now considers.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a claim for relief when the complaint "fail[s] to state a claim upon which relief can be granted." In evaluating a motion to dismiss, the Court must "treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (citation and internal quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to state a claim to relief that is plausible on its face," Iqbal, 556 U.S. at 678 (internal quotation omitted). A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A motion to dismiss under Rule 12(b)(6) must rely solely on matters within the pleadings, see Fed. R. Civ. P. 12(d), which includes statements adopted by reference as well as copies of written instruments joined as exhibits. See Fed. R. Civ. P. 10(c). Documents that a defendant attaches to a motion to dismiss are "part of the pleadings" under Rule 10(c) if they are integral to his claim, they are referred to in the complaint, and their authenticity is undisputed. See Kaempe v. Myers, 367 F.3d 958, 965 (D.C. Cir. 2004); Hinton v. Corr. Corp. of Am., 624 F.

Supp. 2d 45, 46–47 (D.D.C. 2009). The Court may thus consider those materials on a motion to dismiss without treating the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); Marshall v. Honeywell Tech. Solutions, Inc., 536 F. Supp. 2d 59, 65 (D.D.C. 2008).

## III. Analysis

As the Board seeks dismissal of all five counts, the Court will address them separately, bearing in mind that the first four invoke the Rehabilitation Act and the last the FMLA.

### A. Disparate Treatment (Count I)

Porfiri's first claim asserts that the Board treated him differently because of his disability. Because he has sued the federal government, which is not a covered employer under the Americans with Disabilities Act, see 42 U.S.C. § 12111(5)(B)(i) ("The term 'employer' does not include . . . the United States . . . ."), he brings his claim under the Rehabilitation Act, 29 U.S.C. §§ 791 *et seq.*, which "governs employee claims of [disability] discrimination against the Federal Government." Ward v. McDonald, 762 F.3d 24, 28 (D.C. Cir. 2014) (citation and internal quotations omitted). For this case, however, it is a distinction without a difference: while the Rehabilitation Act provides generally that "[n]o otherwise qualified individual with a disability" may be discriminated against by a federal employer "solely by reason of her or his disability," 29 U.S.C. § 794(a), the "[t]he standards used to determine whether [the Rehabilitation Act's nondiscrimination provision] has been violated . . . shall be the standards applied under . . . the Americans with Disabilities Act . . . ." § 794(d). And, unsurprisingly, "[b]ecause of the similarities between the Rehabilitation Act and the ADA, cases interpreting either are applicable or interchangeable." Alston v. Washington Metro. Area Transit Auth., 571 F. Supp. 2d 77, 81 (D.D.C. 2008) (citation and internal quotations omitted).

A *prima facie* claim of disparate treatment (under either Act) requires proof "that (i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's . . . disability." Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008). An adverse employment action in a non-retaliation claim requires a "tangible employment action," meaning "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998). Plaintiff here identifies numerous steps by the Board that he believes rise to the level of "adverse employment actions" — for example, adding travel-related job responsibilities; removing his supervisory authority; decreasing the number of days per week that he could telework; burdening him with an office move; and imposing other requirements as a way to get him to resign. See Compl., ¶ 117.

In moving to dismiss, the Board insists that Plaintiff's claim fails as a matter of law because none of the complained-of acts rises to the level of an "adverse" action under the Act. While many of Plaintiff's grievances are admittedly weak — "not everything that makes an employee unhappy is an actionable adverse action," Baird v. Gotbaum, 662 F.3d 1246, 1250 (D.C. Cir. 2011) (internal citation and quotations omitted) — he identifies at least one that, as alleged, constitutes an adverse action in this Circuit: the Board's removal of his supervisory responsibilities. See Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) ("[W]ithdrawing an employee's supervisory duties . . . constitutes an adverse employment action.") (citation and internal quotation marks omitted); Burke v. Gould, 286 F.3d 513, 522 (D.C. Cir. 2002).

The Board does not dispute this precedent, arguing instead that Plaintiff's claim fails because he has not alleged that the Board removed his supervisory authority because of his disability — in other words, that the Board's action was motivated by discrimination. But a

plaintiff need not plead all elements of a *prima facie* case in his complaint to survive a motion to dismiss, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511–14 (2002), and the D.C. Circuit has cautioned that a court need not conduct a "full causation analysis" when evaluating a plaintiff's *prima facie* case of disability-based discrimination to determine whether the adverse action resulted from the employer's knowledge of a plaintiff's disability. See Adeyemi v. D.C., 525 F.3d 1222, 1226 & n.1 (D.C. Cir. 2008).

More problematic for the Board, however, is that the arguments it makes in support of its "no causation" argument are flawed on their own terms. First, it contends that the Court can draw no inference of discriminatory intent from the Board's actions because Porfiri failed to allege that his boss, Loeb, knew of any disability at the time he removed Porfiri's supervisory responsibilities. See Crandall v. Paralyzed Veterans of Am., 146 F.3d 894, 897 (D.C. Cir. 1998) (to be liable for discrimination under the Rehabilitation Act, the employer must have "awareness of the disability itself, and not merely an awareness of some deficiency in the employee's performance that might be a product of an unknown disability"). The Board's reading of the Complaint is plainly wrong. Plaintiff states that all relevant supervisors knew of his disability before any of the alleged adverse actions took place. See Compl., ¶ 112. And he alleges specifically that on October 4, 2012 — the day his injuries were aggravated — he emailed his boss, Loeb, to tell him that he was too injured to go to work. Id., ¶¶ 40, 42. Loeb thus had knowledge that Plaintiff suffered from at least some disabling injuries when, the following Monday, he removed Plaintiff's supervisory responsibilities. Id., ¶¶ 43, 45.

Second, the Board maintains that it had legitimate, non-discriminatory reasons for modifying Porfiri's job description — *i.e.*, to implement a new, "flatter organizational structure." Mot. at 22. While this explanation may yield success at summary judgment (if properly

supported), it cannot help here, where such an explanation is not contained in the Complaint. Having moved to dismiss only under Rule 12(b)(6), the Board cannot defeat Porfiri's claims by reaching outside the pleadings to proffer a legitimate, non-discriminatory reason for removing his supervisory authority. Nor was Porfiri required to plead facts that would anticipatorily rebut any possible explanation offered by the Board and reveal it to be pretextual. See Ryan-White v. Blank, 922 F. Supp. 2d 19, 23 (D.D.C. 2013) ("[A]t the motion-to-dismiss stage, a Title VII plaintiff is not generally required to plead facts that specifically rebut a defendant's legitimate, nondiscriminatory reasons or establish discrimination *vel non*."); Reynoso v. All Foods, Inc., 908 F. Supp. 2d 330, 343 (E.D.N.Y. 2012) (whether a defendant will ultimately prevail in showing that it had legitimate, non-discriminatory reasons for its actions "is an issue to be decided on summary judgment, not at the motion to dismiss stage") (citation and quotation marks omitted).

As a last-ditch argument, the Board argues in its Reply that Plaintiff alleged only that he was treated differently from some employees, without alleging that those employees were similarly situated. Even if this argument could defeat Plaintiff's claims on a motion to dismiss, but see Brady v. Office of Sergeant at Arms, 520 F.3d 490, 494 n.2 (D.C. Cir. 2008) ("[T]o make out a *prima facie* case [under Title VII], a plaintiff need not demonstrate that he or she was treated differently from a similarly situated employee . . . ."), the Board's argument comes too late. "[R]eply briefs reply to arguments made in the response brief — they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration." MBI Grp., Inc. v. Credit Foncier Du Cameroun, 616 F.3d 568, 575 (D.C. Cir. 2010) (citation and quotation marks omitted) (emphasis in original). The argument is therefore forfeited as to this Motion. See Pardo–Kronemann v. Donovan, 601 F.3d 599, 610 (D.C. Cir. 2010) ("[D]istrict courts, like [appellate courts], generally deem arguments made only in reply briefs to be

forfeited . . . ."); Conservation Force v. Salazar, 916 F. Supp. 2d 15, 22 (D.D.C. 2013). Plaintiff's claim of disparate treatment under the Rehabilitation Act thus survives.

B. Failure to Provide Reasonable Accommodations (Count II)

The Rehabilitation Act also requires federal employers to "take reasonable affirmative steps to accommodate the [disabled], except where undue hardship would result." Barth v. Gelb, 2 F.3d 1180, 1183 (D.C. Cir. 1993). An employer cannot refuse to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [it] can demonstrate that the accommodation would impose an undue hardship . . . ." 42 U.S.C. § 12112(b)(5)(A). Plaintiff alleges that he requested, and the Board failed to provide, reasonable accommodations for his disability. See Compl., ¶¶ 59, 136–141.

In moving to dismiss, the Board argues only that this count is deficient because all of the accommodations he asked for were granted. See Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999) (a "fundamental element" of a failure to accommodate claim "is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied"). To support its argument, the Board points to Plaintiff's October 2012 accommodation request, its January 22, 2013, Decision Letter, and Porfiri's related doctor's notes, all of which it appended to its Motion. See Mot., Exh. A (Accommodation Request); id., Exh. B (Doctor's Notes); id., Exh. C (Decision Letter); see also Compl., ¶ 59 (referencing the Accommodation Request); id. ¶¶ 84–89, 136–141 (referencing the Decision Letter); id. ¶¶ 67, 77 (referencing the Doctor's Notes). Plaintiff does not object to the Board's characterization of these materials as "incorporated by reference" into his Complaint, see Mot. at 4 n.2, nor has he disputed the materials' authenticity. And, as the question of whether the requested accommodations were granted is "fundamental" to Porfiri's claim, Flemmings, 198 F.3d at 861, the Court will treat

those materials as incorporated within Plaintiff's pleadings in deciding the Board's Motion. See Kaempe, 367 F.3d at 965; Marshall, 536 F. Supp. 2d at 65.

Although the Board indeed does appear to have granted most of Plaintiff's requests, there is at least some daylight between what he sought and what the Board approved, making dismissal premature at this stage. Porfiri alleges that at least two of his six accommodation requests were denied: his request to be excused from travel unless and until his condition "improved substantially" and his request to be allowed to telework twice per week. See Compl., ¶¶ 59, 85; Accommodation Request at 580–81 . The Court need discuss only the first because the pleadings do not clearly show that the scope of the Board's accommodation matched what was requested by Porfiri and his doctor.

In issuing its Decision Letter, the Board had access to two close-in-time notes from Porfiri's physician, both recommending that he refrain from travel to avoid aggravating his symptoms for at least some period of time. In November 2012, the doctor advised Porfiri "not to travel over the next four months," Doctor's Notes at 167, and, in late December 2012, similarly suggested that Plaintiff "not travel beyond the local commuting area for the next several months." Id. at 712. Although it is plausible that the physician intended to signal a time limit on this accommodation — *e.g.*, "four" or "several" months — it seems equally likely that the doctor merely offered projections based on her clinical assessment of Porfiri's recovery. Supporting the latter interpretation, both letters conclude by stating that "[t]he above accommodations should be continued unless there is a medical reason to alter them." Id. at 168, 713. In the December note, moreover, she makes clear that his progress will be monitored regularly and with some frequency, stating: "I will continue to evaluate Mr. Porfiri every four to six weeks going forward to monitor his progress." Id. at 713. Porfiri's request to avoid travel "unless and until [his]

impairment improve[d] substantially," see Accommodation Request at 580, was thus neither medically unsubstantiated nor materially different from his physician's recommendations.

The Board, however, did not grant Plaintiff's request — *i.e.*, that his travel ban continue "unless and until" his conditions improved. Instead, it excused him from travel for a fixed, three-month term, with no ability to extend the travel ban, even if medically recommended. See Decision Letter at 270 (agreeing to "excuse [Porfiri] from traveling for up to three months," while noting that "this accommodation . . . must be limited in time"). Defendant justified its decision on operational grounds, explaining that any "extension of this accommodation places an undue and direct operational burden" on the Board by forcing other OGC attorneys to "absorb [Porfiri's] share of the tasks related to deployments." Id. The letter did not invite Porfiri to seek an extension of his travel ban or submit a doctor's note in support of such a request, suggesting instead that he would be unable to avoid deployment once the three-month period expires: "When you are ultimately deployed, if you wish to request other specific accommodations to help . . . [during deployment,] the [Board] would be happy to consider your request . . . ."). Id. at 271.

At this point, therefore, the documents incorporated by reference into Plaintiff's Complaint do not make clear that the Board granted his travel-related accommodation request. His claim for denial of a reasonable accommodation thus also survives.

C. Improper Medical Inquiries and Disclosures (Count III)

The allegations included in Porfiri's third count actually make out two claims, not one. The first is that the Board asked for doctors' notes when some law (not identified by Plaintiff) prohibited it from doing so. The second is that, once the Board obtained the notes it had requested, all of which contained confidential medical information, it improperly disclosed them

to people who had no reason to look at their contents. In part because Plaintiff fails to identify a cause of action distinct from his discrimination, retaliation, or FMLA-related claims (as to improper inquiries), and in part because his allegations are too vague (as to both improper inquiries and improper disclosure of confidential information), the Court will dismiss this count.

        1.  *Improper Medical Inquiries*

Plaintiff alleges two improper inquiries: the Board's October 2012 request that he provide medical documentation "to support his requests for reasonable accommodation[s]," Compl., ¶ 62; see id., ¶ 147, and its December 2012 request for a doctor's note clearing him to return to work after taking medical leave. Id., ¶¶ 72, 151. The Court treats each in turn.

Although Plaintiff has not identified a statutory basis for his claim, section 12112(d)(4) of the ADA, as incorporated by the Rehabilitation Act, 29 U.S.C. § 794(d), does prohibit employers from making medical inquiries of their employees, except when those inquiries are "job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4)(A). One line of permissible, job-related inquiry relates to the employer's obligation to provide reasonable accommodations to a disabled employee. The Equal Employment Opportunity Commission's regulations require employers to engage in an "interactive process" with an employee who requests accommodation in order to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3). "The process contemplated is a flexible give-and-take between employer and employee so that together they can determine what accommodation would enable the employee to continue working." Ward, 762 F.3d at 32 (citation and quotation marks omitted).

Porfiri acknowledges that the Board's first medical inquiry was triggered by his request for reasonable accommodations, but he insists that his requests "should have been promptly

granted without any medical evidence." Opp. at 16. Not so. "When the need for an accommodation is not obvious, an employer, before providing a reasonable accommodation, may require that the individual with a disability provide documentation of the need for accommodation." Stewart v. St. Elizabeths Hosp., 589 F.3d 1305, 1309 (D.C. Cir. 2010) (quoting 29 C.F.R. Pt. 1630, App. § 1630.9); see also 29 C.F.R. Pt. 1630, App. § 1630.14; 56 Fed. Reg. 35726, at *35733 (Jul. 26, 1991). Plaintiff has not detailed why the Board's inquiries were unnecessarily intrusive or alleged facts showing that his need for an accommodation was obvious. And while he has alleged that some manifestations of his physical pain were observable, see Compl., ¶ 43 (Plaintiff was "limping noticeably" shortly after aggravating his back pain), he has also stated that much of his condition was inconspicuous and intermittent: "temporarily debilitating" pain that "can come without warning." Id., ¶ 33. Nothing in the Complaint suggests that the Board "acted in anything but an entirely appropriate manner" in seeking a physician's guidance to identify Porfiri's functional limitations and craft appropriate accommodations. Stewart, 589 F.3d at 1309; see Perry v. Arc, No. 10-6337, 2010 WL 4721611, at *5 (W.D.N.Y. Nov. 22, 2010) (dismissing plaintiff's claim of improper medical examination under § 12112(d)(4)(A) where "the face of Plaintiff's complaint lays out the job-relatedness of the examination request").

As to the Board's request that Porfiri secure a doctor's note clearing him to return from FMLA leave, he has similarly failed to state a claim (distinct from his separate claims under the Rehabilitation Act and FMLA) that would entitle him to relief from this Court. He was ultimately allowed to return to work, and the harms he has alleged are only vaguely, if rather implausibly, connected to the Board's single request for a doctor's note as part of the interactive process. See Martino v. Forward Air, Inc., 609 F.3d 1, 4–5 (1st Cir. 2010) ("Every circuit court

to consider illegal inquiry claims under [the ADA] has concluded that proof of actual harm is required for recovery."); Indergard v. Georgia-Pac. Corp., 582 F.3d 1049, 1060–61 (9th Cir. 2009) (the ADA does not provide a cause of action for mere "technical violation[s]" of § 12112(d)(4)(A), without a corresponding adverse employment action).

This is not to say that Porfiri's allegations are irrelevant to his other claims. On the contrary, the ADA's ban on discrimination includes a prohibition on improper medical inquiries, 42 U.S.C. § 12112(d)(1), and evidence of the latter, even if not actionable in its own right, may bolster Porfiri's disparate-treatment and retaliation claims. Additionally, Plaintiff may, in pursuing his surviving FMLA claim, see *infra* Section III.E, seek evidence demonstrating that the Board treated Porfiri differently from other employees returning from FMLA leave, in violation of 29 C.F.R. § 825.312. While he will be permitted to pursue those counts, his improper-medical-inquiry claim ends here.

2. *Improper Disclosure of Confidential Information*

Porfiri separately alleges, again without identifying a statutory basis, that, "to the extent [the Board] obtained medical information, . . . [it] failed to properly limit the use and disclosure of [that] information." Compl., ¶ 156. Although Plaintiff has good intuitions — the disability laws do prohibit some disclosures of confidential information — his allegations are insufficient here to avoid dismissal.

The same section of the ADA that regulates medical inquires by employers also requires those employers to safeguard certain information obtained from those requests. See 42 U.S.C. §§ 12112(d)(3), (4); Doe v. U.S. Postal Serv., 317 F.3d 339, 344 (D.C. Cir. 2003) ("Section 12112(d)'s confidentiality requirement . . . ensur[es] that the information disclosed pursuant to an employer's medical inquiry spreads no farther than necessary to satisfy the legitimate needs of

both employer and employee."). Porfiri's Complaint acknowledges that some Board personnel could permissibly see the medical information he submitted, as he complains only of disclosure to certain unidentified "people who could not and did not evaluate [the doctor's note] for purposes of proving [*sic*] reasonable accommodations . . . ." Compl., ¶ 156. While Porfiri claims, in essence, that his information was disseminated "farther than necessary," he offers no specific allegations to support that assertion, having failed to identify anyone lacking "need to know" status who nevertheless viewed his medical information.

Nor, for that matter, has Plaintiff identified what harm he suffered as a result of the improper disclosures. "[I]n order to state a claim under the Rehabilitation Act's confidentiality provisions, . . . a plaintiff must show that an unauthorized disclosure of medical information resulted in a 'tangible injury.'" Koch v. Walter, 935 F. Supp. 2d 164, 176 (D.D.C. 2013) (emphasis added) (quoting Cossette v. Minn. Power & Light, 188 F.3d 964, 970 (8th Cir. 1999), and citing cases). In other words, as with the improper-inquiry provisions of 42 U.S.C. § 12112, a mere "technical violation of section 12112(d) will not in and of itself give rise to damages liability." Giaccio v. City of New York, 502 F. Supp. 2d 380, 386–87 (S.D.N.Y. 2007). Certainly, Plaintiff alleges that some unspecified "actions" by the Board "caused Plaintiff mental stress, anxiety and loss of enjoyment of life." Compl., ¶ 157. But even if those harms suffice to state a "tangible injury," see E.E.O.C. v. Ford Motor Credit Co., 531 F. Supp. 2d 930, 941 (M.D. Tenn. 2008) ("[S]hame, embarrassment, and depression" that is suffered "as a result of [an allegedly improper] disclosure" may count as a tangible injury under § 12112(d).), Plaintiff has not attributed those harms to the vaguely alleged disclosures of his medical information. Nor is it clear whether such harms would be plausible, given that Plaintiff has already stated that his colleagues and supervisors already knew of his condition, and that at least some outward signs of

his disability were clearly "visible." Compl., ¶¶ 43, 44, 63. The Court thus dismisses Count III in its entirety.

D. Retaliation (Count IV)

In Plaintiff's final Rehabilitation Act claim, he alleges that the Board retaliated against him both for submitting a request for reasonable accommodations and for filing an EEOC complaint. See id., ¶¶ 161–162. He asserts that, as a result of either or both of those actions, the Board required unnecessary medical documentation for his accommodation request; sat on the request longer than necessary; prohibited him from returning to work even after receiving his medical clearance; changed his job description to make his work more burdensome; and denied certain accommodations. See id., ¶ 162.

To make out a retaliation claim under the Rehabilitation Act, "an employee must show she engaged in protected activity, as a consequence of which her employer took a materially adverse action against her." Taylor v. Solis, 571 F.3d 1313, 1320 (D.C. Cir. 2009) (citation and quotation marks omitted). The Board does not dispute that Plaintiff engaged in protected activity, arguing instead that all of the allegedly adverse actions occurred before he did so, and, somewhat confusingly, that none of the Board actions is "materially adverse" because it (purportedly) granted all of the accommodations Plaintiff had requested. See Mot. to Dismiss 27–28. Neither argument is a winner. First, all of the acts Plaintiff identifies as retaliatory occurred after he submitted his request for reasonable accommodation on October 15, 2012 — an act that the Board acknowledges is a protected activity under the Rehabilitation Act. See Mot. at 27.

Second, the Board does not dispute that the complained-of acts unrelated to Plaintiff's accommodation request are materially adverse. Even if it had, the Complaint alleges numerous

Board steps that, while perhaps not rising to the level of "adverse actions" for purposes of a discrimination claim, would plausibly suffice for a retaliation claim — the latter "requir[ing] less" of a showing of material adversity than a non-retaliation claim. Joyce v. Office of Architect of Capitol, 966 F. Supp. 2d 15, 23-24 (D.D.C. 2013); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67–68 (2006) (The Rehabilitation Act bars acts that "a reasonable employee would have found . . . materially adverse, which in this context means it well might have dissuaded a reasonable worker from" engaging in a protected activity.) (citation and quotation marks omitted). The Court thus denies the Board's Motion as to Count IV.

    E.  Interference with FMLA (Count V)

Last, Count V alleges interference with Plaintiff's family-and-medical-leave rights. The Board argues for dismissal on a gestalt theory that, because it granted Plaintiff's request to take medical leave, no "interference" with his rights under the FMLA occurred. That argument oversimplifies the Complaint — which also alleges that the Board interfered with Porfiri's right to be restored to an equivalent position upon his return from leave — and reflects a cribbed reading of the statute.

The FMLA broadly provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1). Those rights include leave entitlements, see § 2612, as well as an employee's "entitle[ment], on return from [§ 2612] leave . . . to be restored by the employer" to either "the position of employment held by the employee when the leave commenced" or "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." § 2614(a)(1); see Breeden v. Novartis Pharm. Corp., 646 F.3d 43, 50 (D.C. Cir. 2011).

Porifiri claims that the Board interfered with, *inter alia*, his right to return to a job with "equivalent . . . terms and conditions." § 2614(a)(1). He alleges that the Board modified his position description while he was on leave, inserting a requirement that he provide "deployment support in the field as an essential function of [his] job." Compl., ¶ 88; see Decision Letter at 270 (describing deployment as an "essential function" of OGC attorneys); compare Mot., Exh. D (Plaintiff's position description as of June 29, 2011) at 747–48, with id., Exh. E (Plaintiff's updated position description as of January 23, 2013) at 264. This change appears to be critically important to Porfiri, who asserts that, based on his disability, he could not perform this newly "essential" function. See Compl., ¶¶ 88, 92–93.

Because the Board was focused on arguing why it was statutorily entitled to require a doctor's note before granting Porfiri medical leave, it ignored this critical allegation. Defendant has thus not disputed that his position changed upon his return from leave. See Mot. at 24 (describing the change as part of "an initiative to integrate OGC attorneys [into] the agency's investigative mission"). Nor has it argued that, although the position description changed, it is, for all purposes, equivalent to the one Porfiri held before taking leave. Cf. Mitchell v. Dutchmen Mfg., Inc., 389 F.3d 746, 749 (7th Cir. 2004) (new position was "equivalent" to old one under § 2614(a) where employee was given new tasks that were substantially similar to old tasks but were no more "physically demanding").

Although this reason is sufficient for Count V to survive, Porfiri has made other allegations — also left unaddressed by the Board — that preclude dismissal at this stage. For instance, he claims that the Board improperly forced him to draw down his medical leave when he was ready and able to return to work. See Compl., ¶ 170; 29 C.F.R. § 825.311 ("An employee may not be required to take more FMLA leave than necessary to resolve the

circumstance that precipitated the need for leave."). And, as previously noted, see *supra* Section III.C, Porfiri alleged that the Board wrongfully required a doctor's note as a condition of returning from leave — an action that, depending on whether Defendant had a "uniformly-applied policy or practice" of requiring such notes, id. § 825.312, might further bolster his FMLA claim.

**IV. Conclusion**

For these reasons, the Court will grant in part and deny in part Defendant's Motion to Dismiss. Count III alone will be dismissed without prejudice. A separate Order consistent with this Opinion will be issued this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: August 17, 2015